Your honors, may it please the court, my name is Aaliyah Karmali, arguing on behalf of Petitioner Mejias Siliezar. Please, it's a little hard to hear you there. Sorry, can you hear me now, your honor? Can you turn that up a little bit there? Give me another test. Yes, your honor. Hello? Yeah, if you move that mic a little closer, move the stand closer to you. Because you're being recorded for posterity. Not that, not that, just the actual mic. Oh, good. There we go. I think now I can try now. Hello? Yeah, there you go. Very good. Apologies, your honor. I'm here today to discuss three things. Namely, Cole v. Holder, which was a decision that this court decided in 2011. And it stands for the proposition that where all the evidence, there's any indication that all of the evidence was not considered, a mere catch-all phrase does not suffice from the Board of Immigration Appeals. And that's exactly what happened here. The court in Cole also later clarified that certain indications that all the evidence may not have been considered include, one, misstating the record, and two, failing to mention evidence that could be either highly probative or potentially dispositive. And unfortunately, both of those fact patterns we see in this case, meaning that Cole was not complied with. In this case, the immigration judge and the board both essentially just include one boilerplate sentence that refers to all of the evidence. Allegedly, all of the evidence was considered, and even if it was not explicitly mentioned, the board thinks that's sufficient to pass muster under Cole, and petitioner disagrees with that. In this situation, principally the expert report of Dr. Thomas Bowerman and his testimony was completely ignored in the decision. The decision of the immigration judge was nine pages long. It was single-spaced. It did not even list the expert's testimony in the list of exhibits. But the declaration is like 37 pages. It's longer than the testimony. It's 25 pages long. Do you make anything of a particular discrepancy? That is, he said something terrific in the testimony? Because the declaration is enormous, and it proves things are very bad in El Salvador. I didn't see much difference between the testimony and the declaration. Do you have a particular point to make about the difference? Well, Your Honor, the testimony of the expert was actually not referenced in the decision either and not listed in the exhibit list. So, effectively, it as well was ignored along with the report. But what I call the report or the declaration is referenced. And then what? When I read it, as I said, it's very detailed about things are very bad in El Salvador. But other than kind of saying things are bad for generic groups of people and this person is part of a generic group, he doesn't tie it much. In fact, at first he doesn't remember that he spoke to him in person. Then he does remember, which is fine. But what's in it that is different that would make a fact finder say, yes, I know things are bad in El Salvador, but this person, this report, I really need to point out or talk about why they're bad for this person. Is there something you would point to, point us to? We actually have to reiterate that the record doesn't reflect mention of the expert declaration or the testimony. In terms of the report, as you say, it's extensive. It's 25 pages, plus his CV, plus every publication he's ever written, including El Salvador and MARA 13. Specifically, what he gets into in the declaration, over and over and over again, is that the act of flight itself can be considered a basis for well-founded fear of future persecution in the Ninth Circuit on the basis of imputed political opinion. Counsel, as you know, it's not necessary for the IJ to lay out and hike bare about everything that the IJ considered in making a decision, right? You agree with that? Correct. So in this case, is there anything in the record that you can say shows definitively that the IJ simply didn't consider Dr. Borman's testimony, or both the lengthy written work and otherwise? Well, there's nothing that says, you know, Your Honor, I did not consider said declaration of Dr. Borman. But there are some indicia that perhaps the IJ did consider the information, right? Yes, Your Honor, and it really matches the facts in Cole, where there's a glaring absence entirely of an entire expert report and body of evidence. And Cole says that where that evidence is highly probative, which this evidence is. Let's say we have it right here before us. It's so general. I mean, it's very troubling. We, unfortunately, hear cases about these sorts of things a great deal. And there are lots of troubling things about the country. But you've got to tie it to these petitioners. And what is it in the doctor's testimony that does that that was not considered by the IJ in this case? Specifically, Your Honor, there were facts that misstated that a petitioner was related. I'm sorry, that the individual who killed Guillermo Petitioner's cousin knew that the petitioner was related to Guillermo, who was the former mayor of Tepetitan, which is where Petitioner is from. But as I understand it, of course, this was a later deal, but this was all economic. As I understand it, this is the ‑‑ I guess he was, what, an uncle or something like that? I'm sorry, Your Honor? The third party that we're talking about that was later on killed looked like it was an extortion demand, and that was found specifically at AR-80. So we got an extortion demand. I know with economic motivations, you got economic motivations with respect to the other party as well, neither of which provided an access to a PSG. So how does that help you? Because, Your Honor, this is not simply an economic motive case. I think that's what the immigration judge was essentially trying to do and erred in myopically reviewing the facts. The facts are that not only did Petitioner refuse to pay the full amount of extortion on at least two occasions, he also closed his shop at least twice at risk to himself and to his family. And on the third count, he fled the country, which is, again, according to the expert testimony, a direct sign and challenge to the gang that he can be controlled by them. When you say he refused to pay, is there any difference between that and unable to pay? Is it a political opinion not to have enough money when the mafia comes around? Well, Your Honor, in the facts, the Petitioner actually testified the first time that he did not have the money. And it wasn't until his wife came in the room and saw that one of the assailants was armed that she said no, give him the money. So his first act and his first words to the gang were no, which is a clear act of refusal. With respect to the – can we distinguish between the extortion of him, which does seem economic, and then the murder of the mayor, which was long after he fled, was it not? He fled in 2013. 2013, Your Honor. Yes. And then, you know, more political things happened and this cousin was – 2016. He was a cousin and the mayor. That's correct, Your Honor. He was a cousin and he was the mayor for a number of years. And so when you try to get the particular social group, at one point it's small business owners who resist gangs and then it's the relatives of political figures who resist gangs. And how does that make them socially distinct? That is, somebody would say, oh, he's a small business owner and we know that his uncle is the mayor? Usually in social distinctiveness, you're looking at race, religion, something that's known in the community generically, not just to a particular persecutor. Is that fair? Yes, Your Honor. In this case, the petitioner and the decedent share the same last name. And it's stated in the testimony in the declaration of petitioner that he was a public supporter of the youth soccer league that Guillermo Mejia had instituted once he became a mayor as a clear sign to the gang that he was not going to tolerate youth recruitment in Tamara 13 anymore. The expert testifies to this that soccer in and of itself is a political statement in El Salvador and is used in order to get youth involved in other positive things rather than in gangs. Do you want to save any of your time, counsel? It's up to you. Sure. Okay. Why don't you save that for rebuttal then? Very well. Let's hear from the government. Good morning, Your Honor. Spencer Shuchard for the Attorney General. May it please the Court. This case turns on nexus, as I think you've gleaned. The agency prevails here because the petitioner needed to show a nexus between a ground protected by the Immigration and Nationality Act and some harm that he suffered or fears, and he didn't do that. Nexus is dispositive. Again, these are pretty commonplace facts. Petitioner is a welder, self-employed. He takes orders from customers up front, takes partial payment for that, and he goes to the store to buy supplies to complete the orders. MS-13 takes notice of this, sees him spending money at the store, and it does what gangs do, which is it extorts him through intimidation for money. Money is the goal. Money is the motive. Nexus is motive. And it's settled that criminal extortion or a gang's interest in enlarging or maintaining its criminal enterprise is not a nexus under the Immigration and Nationality Act. So that understanding of the facts is all the agency needed to deny petitioner's claim reasonably. But, counsel, it seems to me that opposing counsel is stressing Cole versus Holder and says there was a lengthy testimony by the expert, there was a lengthy report by the expert, and the IJ never addresses those or even mentions those in the opinion. What's your response to that question? Sure, sure. Let's talk about Dr. Borman. So our position first is that the IJ did consider both the testimony and the report. So point us to where you think the IJ did that. Well, we have the blanket statement at page 75. It says all evidence in the record is considered. Okay. So other than that? Other than that, we have more directly on page 77, the immigration judge talks about the political ramifications of refusing to pay extortion or ostensibly refusing to pay extortion and of closing your shop. Those are things that the expert testified to. The petitioner didn't talk about political ramifications of that. He talked about his fears. He talked about his experiences. But he didn't act as an expert about what gangs think of politics. So point me to where on page 77 you think that they're talking about the expert. I will find it for you. I'm taking concrete steps. I never testified to openly opposing gangs. There's no evidence the gang knew he was closing his shop. All these things are – he's talking about the political ramifications there. That's not something the petitioner testified to. Granted, it's implied, but he's not saying the magic words. I'm talking about the expert's testimony here, but that is what the topic is. He's talking about political motive, and the political motive all comes from the expert. It doesn't come from the petitioner. Is it necessary for the IJ to specifically refer to the expert as long as there is an acknowledgment that all evidence was considered and the type of matter covered by the expert's testimony was referred to by the IJ? No, Your Honor. As you pointed out, the agency doesn't have to inventory the evidence and take account of every piece of it. It just has to announce its decision in terms that are reviewable and point out that it's considered what it's done, and it did that here. We have an unusual situation here, as Judge Boggs has pointed out, where sometime after the original extortion of the petitioner occurred, you had this cousin who was murdered. He was the mayor, but from what I saw in the record, it looks like the IJ determined that the harm that was originally suffered by this mayor was extortion, the same kind of thing that had occurred with the petitioner. Given that fact and the fact that he didn't pay and arguably was murdered because of that, does that again go to the nexus argument that you made at the beginning? Absolutely. The point here is that the agency found reasonably that there's just one motive throughout the retrospective, prospective, which is criminal motive. I'll point Your Honors to page 271 in the record, which I think is where the immigration judge got his holding about the extortion of the mayor, Guillermo, because there's a newspaper article submitted by the petitioner that says the mayor was killed because he didn't pay $30,000 in extortion. There's nothing in there about his politics other than the fact that he is a political figure. And again, he was killed by his own relative at his house. There's nothing in there that really suggests that there's some sort of political motive at play other than the expert's general testimony, which is more in the line of country conditions. Dr. Borman is a professional expert and his words aren't magic. It's easy to go on Westlaw and find examples of the agency discounting his evidence and of the court upholding it. I'll give you one. But, Counselor, actually, before you do that, the fact that the agency in the past has specifically said we discount his opinion, that didn't happen here. There was no mention of his opinion. That's the concern. The fact is that the agency knows how to discount his opinion, and you were about to give us an example where they did. Here they didn't seem to do it at all. And isn't that a problem under Cole v. Holder? It's not a problem. I think that they did enough, Your Honor, because it's actually not true that they didn't cite to the report they did. He cites Exhibit 3, all tabs. The expert's report is in Exhibit 3, so he did consider it. Certainly there was a blanket thing saying I considered everything, but it's just there was so much discussion about this expert and lengthy testimony, and yet there's nothing. I read it. I scanned it. I did word searches on it. I couldn't find anything saying, oh, yes, there was this expert. Okay. I mean, granted, that's true. Okay. So I didn't miss anything then? No. You have what I have, and we can read it differently, and that's fine. But granted, let's say that's true, and he didn't consider it sufficiently under Cole. There's no prejudice here because the immigration judge did consider the report. He cited to it. He talked about topics that are in the report. Is there anything in the report that talks about the petitioner himself? It talks about what the petitioner told the expert. Right. Was there any analysis by the expert of the petitioner's situation, or I don't think there was anything in there about the mayor. That was later. But is there anything about the petitioner's personal situation?  He talked about the risks the petitioner created based on that because he has a theory that gang activity is essentially political activity. That's where he says things like, well, if this guy closed his business, closing a business is anti-gang political opinion. Exactly, and that's why it's in the line. He didn't pay all they wanted. Not paying all they want is anti-gang political opinion. Right, and nor could he. Dr. Borman is not a mind reader. The best he can do is tell us that sometimes some gang members will act with a political bent. This is in the nature of country conditions evidence. It's not going to be any sort of error for the agency to discount this evidence when it did consider the report. And Dr. Borman's testimony is no different than his report. It's less fulsome, obviously, because there's a lot of report to go by. And as you pointed out, Your Honor, the expert had forgotten a lot of this. He wanted to have his report open because that's the best summary of what he did. Let me ask you this, counsel. I appreciate the argument you're saying that the report doesn't add a whole lot. I appreciate that. What is the best authority you have saying that? Assume my view that the I.J. forgot about the report and the I.J. forgot about the expert. Is there a case interpreting Cole that says, even if the I.J. doesn't analyze the report, it doesn't really matter because it doesn't really add a whole lot? I don't know if this particular case interprets Cole, but I'm going to give you Torres-Torres. The case is 837 Federal Appendix 430. Okay, so unpublished. Do you have anything published? No, sir. Okay. But in that case, there was no prejudice when the immigration judge explicitly discounted Dr. Borman's testimony, and that was error because Dr. Borman was going to testify consistently with his report and the I.J. considered the report. Again, Dr. Borman's words aren't magic here. The agency acted on the best evidence that it had, which is the petitioner's testimony. Petitioner tells us he's easy money to the gangs. The gangs target everybody in town. They targeted his father, who's not a small business owner and who never refused extortion. Targeted the mayor, who's a mayor. This is a very clear-cut case of just extortion. Petitioner gives us a Rivera Montenegro who's trying to put himself in the position of an extortion plus, where you have extortion, which is not nexus, plus with something where the extortion is targeted, a protected ground, but that's an invented motive here. The immigration judge is not required to accept an expert's speculation and create that motive and do anything with it to do a mixed motive analysis, to do any sort of thing at all. Let me jump in with one more question about the record. I appreciate there are a lot of different arguments, and there's 2013, there's 2016. Sometimes it's tough to keep them all track of everything, which is why I'm going to ask both counsel this question. To the extent that Mejia argued that he would be persecuted because of an imputed anti-gang opinion based on his relationship to the mayor, was that specific argument addressed? It's addressed in the nexus argument, Your Honor, because it's a political bent, and what we have is a clear-cut nexus finding, sole nexus finding, that everything that happened in this case was due to money. So the nexus subsumes everything retrospectively, prospectively, because what we have is a gang terrorizing a town by stealing their money. Other questions by either of my colleagues? Very well. Thank you. So you have a little rebuttal time left, counsel. Yes, Your Honor. Would you like me to answer your question, Your Honor? Please. The argument, actually, that the immigration judge referred to when he was talking about that specific issue, about petitioner being related to Guillermo and that being the basis of a well-founded fear of future persecution, the judge essentially threw that argument out the window because it said there was no nexus to a past persecution on political grounds in relation to Guillermo. So he didn't conduct that analysis, and that was another error in the law. So you would say that because it was 2016, which is after he had left, there was no analysis of that in terms of if he were to come back, what would happen in terms of future persecution? I'm not sure, Your Honor, why the judge dispensed with that portion of the analysis. I think it was a misinterpretation of the law where he may have thought he didn't have to conduct that analysis if there was no nexus to past persecution on that ground. But here, you know, the facts change. If petitioner were to return to the country he fled from, the facts are completely different because it doesn't just become about extortion. It becomes flight and return. And as the expert testified, too, the gangs are, quote-unquote, obsessive about finding people throughout the country. But that latter point is that's a general principle. Almost anyone who flees from a gang situation would then be able to have future fear. He wouldn't have to prove past fear based on any particular nexus. Your argument would be that the reasonable fear of future persecution would be because you fled. It's fact-specific and it's case-specific, Your Honor. We're not suggesting that that door necessarily be opened uncritically in every case. But on these facts specifically, the expert testified that the gang views flight and return as a defiance to its authority. That's pretty general, isn't it? I mean, I'm not saying it's right or wrong, but it's not that specifically this gang in this place or something. It's that gangs generally would target people. Thank you, Your Honor, to MS-13 and El Salvador. And the expert did talk to Petitioner directly, not just review his declaration. And he specifically said that there's a high probability and predictable risk of egregious physical harm and death if Mr. Mejia is removed to El Salvador. That's AR-162. The reason he says it is because anybody who flees and returns, the act of flight was a political statement. And that's correct, Your Honor. Okay. Then it is general. I mean, you're right, he says this person. But the reason he gives for it is a reason that would apply to almost anyone with money who fled. I don't know that it's necessarily general, Your Honor. I think maybe it can apply to other organizations such as the mafia, which Dr. Bowman likens MS-13 to. To that extent, perhaps it is general. Counsel, just one final point. What's the best case that you have that you think is on all fours with this one? Colby-Holder, Your Honor, because it talks specifically about Colby-Holder, Your Honor, because it specifically talks about probative and potentially dispositive evidence needing to be included in the record. We're not talking about a birth certificate. That's kind of the crucial point here is Dr. Bowman's testimony and declaration. What's the word? Probative and highly probative and dispositive. Or potentially dispositive. Potentially? Okay. Other questions by my colleague? I think not, so thank you very much to both counsel for your argument. This case is submitted. Thank you, Your Honors.
judges: Boggs, SMITH, OWENS